## UNITED STATES v. LICHTER et al.

Civ. No. 1176.

District Court, S. D. Ohio, W. D.

June 21, 1946.

Ray J. O'Donnell, U. S. Atty., for Southern District of Ohio, of Cincinnati, Ohio, for plaintiff.

Steer, Strauss & Adair, of Cincinnati, Ohio, for defendant.

DRUFFEL, District Judge.

This cause came on for hearing before the Court on February 18, 1946, on the motions of plaintiff for summary judgment and for judgment on the pleadings, and the Court, having considered the pleadings, the motions filed by plaintiff, the affidavits filed in support thereof and in opposition thereto, and having considered the motion to dismiss the complaint thereafter filed by defendants and the briefs and arguments of counsel, and having taken the case under advisement, now finds the facts and states the conclusions of law as follows:

### Findings of Fact

(1) At all times herein mentioned, defendants resided in Cincinnati, Hamilton County, Ohio, and did business in that city as copartners under the firm name and style of Southern Fireproofing Company.

(2) The business of the Southern Fireproofing Company is the construction of brick masonry structures customarily by subcontracts, a type of work which is in general similar to brick masonry work as it has been known in the construction industry for many years. Defendants allege, and for the purpose of these findings it is

assumed, that the prime contracts set out in Exhibit A to the complaint were contracts with a Department, awarded as a result of competitive bidding for the construction of buildings and facilities, and that the subcontracts involved in this action were subcontracts under said prime contracts, and were obtained by defendants after further competitive bidding.

(3) On October 20, 1944, Robert P. Patterson, then Under Secretary of War, acting pursuant to the Renegotiation Act, as amended, 50 U.S.C.A.Appendix, § 1191, made a unilateral order (in the words and figures set out in Exhibit A to the complaint) determining that defendants had realized excessive profits of $70,000 during the calendar year 1942 on the subcontracts.

Defendants' profit, before taxes and before renegotiation, on these subcontracts was determined by the representatives of the Under Secretary of War to be $136,429.

(4) On October 20, 1944, the Under Secretary of War directed defendants to pay to the Treasurer of the United States on or before November 6, 1944, said excessive profits of $70,000, less the tax credit, if any, to which defendants might be entitled under the provision of Section 3806 of the Internal Revenue Code, 26 U.S.C.A. Int. Rev.Code, § 3806.

(5) The tax credit to which defendants are entitled under Section 3806 of the Internal Revenue Code is in the sum of $42,980.-61.

(6) Defendants have refused to pay to the United States said excessive profits of $70,000 less the aforesaid tax credit.

(7) Defendants have not filed a petition in the Tax Court of the United States for a redetermination of the amount of their excessive profits and the time for filing such a petition has expired.

(8) There is no genuine issue between the parties as to any material fact and plaintiff is entitled to judgment as a matter of law.

Conclusions of Law

(1) The Court has jurisdiction over this action and the parties thereto.

[1] (2) The Renegotiation Act as enacted on April 28, 1942, and as thereafter amended is a constitutional exercise of the war powers of the Congress. It does not involve an unlawful delegation of legislative power to executive officials nor an exercise of judicial power by those officials. It does not involve an exercise of eminent domain powers nor has there been in this case any taking of defendants' property for public use in violation of the Constitution. The statute is not so vague or uncertain as to offend the Fifth Amendment to the Constitution nor does it deprive defendants of due process of law.

(3) The Renegotiation Act applies by its terms to the subcontracts of defendants executed before the statute was passed and as to which final payment had not been made on April 28, 1942. Thus applied, the statute is constitutional.

(4) The Sixth Supplemental National Defense Appropriation Act of 1942, dated April 28, 1942, Public Law 528, 77th Congress, 2d Sess., 56 Stat. 226, did not provide for or permit defendants to have a determination of excess profits in the several District Courts of the United States; that if said Sixth Supplemental National Defense Appropriation Act, as aforesaid, did so provide, the Revenue Act of 1943, 26 U.S.C.A. Int.Rev.Acts, page 421 et seq., deprived defendants of this right to have determined the excess profits in the several District Courts of the United States for fiscal years commencing before July 1, 1943, and for fiscal years commencing after July 1, 1943, and required all such determinations to be had in the Tax Court of the United States; and accordingly, for 1942 business, after the enactment of the Revenue Act of 1943, defendants did not have the option to have a determination of their excess profits, if any, in the District Court on the one hand, or in the Tax Court on the other hand, but were compelled to appeal any determination of excess profits to the Tax Court of the United States.

(5) The Tax Court of the United States has exclusive jurisdiction under the statute to determine all questions of law and fact relating to the amount of defendants' excessive profits for the calendar year 1942, and the failure of defendants to petition the Tax Court of the United States

for a redetermination of the amount of their excessive profits renders the allegations of the answer immaterial.

It is ordered that judgment be entered for plaintiff, the United States of America, against defendants, Jacob Lichter, and Jennie L. Lichter, jointly and severally, in the amount of $27,019.39, with interest thereon at the rate of 6 per cent per annum from the 6th day of November, 1944, until paid, and with costs to the plaintiff.